UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT BOYLE, *individually and on behalf of all other persons similarly situated who were employed by Robert M. Spano Plumbing & Heating, Inc.*,

            Plaintiff,

  -v-

ROBERT M. SPANO PLUMBING & HEATING, INC., and/or any other entities affiliated with or controlled by Robert M. Spano Plumbing & Heating, Inc., and ROBERT M. SPANO,

            Defendants.

Case No. 15-CV-2899 (KMK)

OPINION & ORDER

---

Lloyd R. Ambinder, Esq.
Leonor H. Coyle, Esq.
Virginia & Ambinder LLP
New York, NY
*Counsel for Plaintiff*

Brett R. Cohen, Esq.
Michael A. Tompkins, Esq.
Leeds Brown Law P.C.
Carle Place, NY
*Counsel for Plaintiff*

Michael A. Jakowsky, Esq.
Jackson Lewis LLP
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

    On April 15, 2015, Plaintiff Robert Boyle ("Plaintiff") brought a putative collective action against Robert M. Spano Plumbing & Heating, Inc., along with Robert M. Spano individually and any other entities affiliated with or controlled by Robert M. Spano Plumbing &

Heating, Inc., pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, New York Labor Law Article 19 § 663, the provisions of N.Y. Comp. Codes R. & Regs. tit. 12, part 142, and New York Labor Law Article 6 § 190, *et seq.* (*See* Compl. ¶ 1 (Dkt. No. 1).) The Parties jointly moved for approval of their proposed settlement. For the reasons that follow, their Motion is granted.

I. Background

According to Plaintiff, Defendants, who employed Plaintiff as an apprentice junior plumber from approximately October 2012 through January 2015, regularly required their employees to work more than 40 hours per week without providing legally mandated overtime and otherwise engaged in a policy and practice of underpaying their employees' wages, including by failing to pay spread-of-hours compensation. (*See* Compl. ¶¶ 1, 3–5, 10, 18.)

On December 9, 2015, the Parties submitted to the Court a proposed settlement agreement, which they requested that the Court approve. (*See* Dkt. Nos. 23–25.) The Court denied the Parties' submission without prejudice on January 12, 2016, because the release provision was too broad, the Parties did not provide the Court sufficient information to determine Defendants' potential exposure in the matter, and the extent to which Plaintiff's counsel would be entitled to fees from the settlement agreement and Plaintiff was ambiguous. (*See* Dkt. No. 26.) On January 19, 2016, the Parties submitted a memorandum of law in further support of their earlier, already denied Motion, (*see* Dkt. No. 27), in response to which the Court advised the Parties that they were free to submit a revised settlement proposal that comports with the Court's earlier Order, (*see* Dkt. No. 28). On February 22, 2016, the Parties submitted a revised settlement agreement. (*See* Dkt. Nos. 29–30.) The Court held a conference on April 12, 2016, after which the Parties submitted a revised settlement agreement in light of a lingering error

which the Court pointed out to the Parties during the conference.  For the reasons to follow, the settlement agreement is approved.

## II.  Discussion

As noted in the Court's prior Order, under Fed. R. Civ. P. 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute."  "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  *See* Fed. R. Civ. P. 41(a)(2).  The Second Circuit has recently confirmed that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."  *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (internal quotation marks omitted), *cert. denied*, 136 S. Ct. 824 (2016).[1]  Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'"  *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, No. 15-CV-3068, 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  *Lliguichuzhca v.*

---

[1] Although not relevant here, the Second Circuit has explained the authority of the Department of Labor to approve settlements, noting "the Secretary of Labor has the authority to 'supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under'" certain portions of the FLSA, in which case "'[t]he agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have . . . to such . . . unpaid overtime compensation and' liquidated damages due under the FLSA."  *Cheeks*, 796 F.3d at 201 n.1 (second alteration in original) (quoting 29 U.S.C. § 216(c)).

*Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same). Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (internal quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same). Making this determination "is thus an

information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (internal quotation marks omitted).[2]  To this end, courts require information surrounding "the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award." *Id.* (first alteration in original) (internal quotation marks omitted) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)).

In it is last Order, the Court concluded that the proposed settlement was unsatisfactory because (1) the Parties' proposed general release was too broad, (*see* Order 4–5 (Dkt. No. 26)), (2) the Court did not have enough information to determine Defendants' potential exposure to Plaintiff in the action, (*see id.* at 5–6), and (3) the wording of the proposed settlement apparently left open the possibility that Plaintiff could be called upon by his attorneys to pay additional legal fees, (*see id.* at 6–12).  The Court will begin by considering whether the Parties have satisfactorily addressed each of these issues.

With respect to the first, the Parties have adequately reworked the release provision, although an apparent drafting error remains.  Before addressing that error, the Court notes the manner in which the Parties have revised the release:  Previously, the Parties' "General Release" was a full, separate independent exhibit to the Parties' "Negotiated Settlement Agreement" and

---

[2] This approach is consistent with the requirement that "FLSA settlements . . . not be confidential," in part because "sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177–78 (S.D.N.Y. 2015) (alterations and internal quotation marks omitted).

contained exceptionally broad language. (*See* Dkt. No. 24.) In contrast, this time, the Parties' revised Negotiated Settlement Agreement does not have a separate "General Release" exhibit, (*see* Letter from Leonor Coyle, Esq., to Court (Feb. 22, 2016) Attach. 1 ("Revised Settlement Proposal") (Dkt. No. 30)), but, rather, contains language in ¶ 1(d) of the revised Negotiated Settlement Agreement, a portion of which reads:

> Plaintiff hereby completely releases all statutory, contract, tort and all other claims against Releasees and releases and forever discharges Releasees to the fullest extent permitted by law from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, obligations, grievances, claims, charges, complaints, claims for attorneys' fees and/or costs, and demands whatsoever, in law or in equity, known or unknown, which Plaintiff, Plaintiff's heirs, executors, administrators, successors and/or assigns may now have or hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever against Releases [sic] based upon any conduct occurring from the beginning of the world up to and including the day of the date of this Agreement for conduct set forth in the Lawsuit including, claims arising under or pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and New York Labor Law, and its governing regulations.

(*See* Revised Settlement Proposal, at unnumbered 5–6.)[3] To be sure, the release language remains broad. But critically, this broad language is sharply curtailed, being limited to matters relating to "conduct set forth in the Lawsuit." Given that this is a wage-and-hours lawsuit, unlike the earlier release, it does not "purport to waive practically any possible claim against . . . [D]efendants, including . . . claims that have no relationship whatsoever to wage-and-

---

[3] The revised Negotiated Settlement Agreement also contains some new language in addition to this release language, including that Plaintiff "is not currently aware of any possible claims that could be asserted by him against Defendants related to his employment with Defendants" and that "Plaintiff also affirms that he has not alleged that any of Defendants' decisions regarding his pay and benefits during his employment through the date of his separation of employment were discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law." (Revised Settlement Proposal, at unnumbered 5.)

hour issues." *Lopez*, 96 F. Supp. 3d at 181. Therefore, the Court is satisfied that the new release passes muster. *Cf. Martinez v. Gulluoglu LLC*, No. 15-CV-2727, 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) ("The [c]ourt will not approve a release provision that extends beyond the claims at issue in this action."); *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action.").[4]

However, the Court also feels obligated to note that, while the Parties removed references to the General Release in what now is ¶ 1(c) of the revised settlement proposal (¶ 1(d) in its predecessor), the wording still prohibits Plaintiff from initiating any legal proceeding against Defendants without limiting the provision's reach to such claims as may be released. (*Compare* Revised Settlement Proposal, at unnumbered 3–4 *with* Aff'n in Supp. Attach. 2, at unnumbered 3–4 (Dkt. No. 24).) In light of the change made in the current ¶ 1(d), the Court doubted that the Parties intended ¶ 1(c) to remain so broad, as a narrower release would do Plaintiff little good if

---

[4] That said, one arguably troubling wrinkle, at first, remained. In an apparent attempt to resurrect their initial settlement proposal after the Court's prior Order, the Parties' supplemental memorandum of law argued that the general release was "supported by separate consideration that is above and beyond any unpaid wages purportedly due to Plaintiff." (Mem. of Law in Further Supp. of Mot. for Approval of FLSA Settlement and Att'ys' Fees and Costs ("Suppl. Mem.") 3 (Dkt. No. 27).) Indeed, the Parties stressed, "Defendant would not have agreed to pay such sum to Plaintiff without receiving the general release," and further told that Court that if it should be "not inclined to approve the settlement because it contains the general release, the parties [would be] willing to enter into a separate agreement and general release related to that issue." (*Id.*) After the Court memo-endorsed the supplemental memorandum inviting the Parties to submit a new settlement proposal, but declining to approve the prior submission, (*see* Dkt. No. 28), the Parties submitted a revised proposal for the same sum of money, but with a narrower release, (*see* Revised Settlement Proposal 5–7.) It would therefore be tempting to infer that the Parties indeed "enter[ed] into a separate agreement and general release," (Suppl. Mem. 3), related to that issue, which might seem an end-run around the Court's prior refusal to approve a general release in this case. Nevertheless, at the conference held on April 12, 2016, the Parties confirmed that there was in fact no such side agreement. There is therefore no need to answer the question of whether the existence of such an agreement would hinder settlement.

he could not file any legal action whatsoever against Defendants.  When asked about the issue at the status conference held on April 12, 2016, the Parties confirmed that ¶ 1(c) was, in fact, intended to be limited by the change made to ¶ 1(d).

With that said, the Court is now convinced that the settlement is fair in light of Defendants' potential exposure in this case.  At the time of its last Order, the Court remained unsatisfied because the Parties did not explain the basis for their apparent conclusion that Defendants' maximum exposure at trial fell somewhere in the neighborhood of $29,000, noting that, to the extent such assertion was explained by the damages spreadsheet contained in Plaintiff's Fed. R. Civ. P. 26 disclosure, that analysis did not contemplate attorneys' fees in any way, despite the Parties' representation that "Plaintiff sought to recover approximately $29,000.00 *inclusive of . . . attorneys' fees*."  (*See* Order 5–6 & n.3; *see also* Mem. of Law in Further Supp. of Mot. for Approval of FLSA Settlement and Att'ys' Fees and Costs ("Suppl. Mem.") 2 (Dkt. No. 27).)

The Parties subsequently confirmed that Plaintiff's spreadsheet was, in fact, the basis for this assertion.  After reviewing that spreadsheet, the Court agrees that, if Plaintiff's claim is limited to the pursuit of wrongfully withheld overtime, a figure of approximately $29,000—comprising the wrongfully withheld overtime payments and liquidated damages in the same amount—would mark the upper limit of his possible recovery.[5]  Likewise, Plaintiff's potential recovery through settlement of $16,500—that is, $22,500, less attorneys' fees of $6,000—is

---

[5] Of course, one could respond that it is not reasonable to base Plaintiff's potential recovery only on owed overtime and liquidated damages when his Complaint also asserts other causes of action, including failure to pay spread-of-hours compensation.  (*See generally* Compl.)  However, Plaintiff confirmed at the April 12, 2016 conference that, upon further consideration, there was, in fact, not a basis to proceed on those claims.

comfortably north of half of the amount that Plaintiff by his own estimate could have recovered at trial.  (*See* Suppl. Mem. 2 ("Plaintiff sought to recover approximately $29,000.00 inclusive of liquidated damages and attorneys' fees.").) [6]  Such a robust recovery—particularly when augmented by settlement's inherent time, cost, and risk savings—is "fair and reasonable," *Wolinsky*, 900 F. Supp. 2d at 335, and courts have approved more modest FLSA settlements, *see, e.g.*, *Villalva-Estrada*, 2016 WL 1275663, at *3 ("[T]he proposed settlement would allow [the plaintiff] to receive 47% of his maximum possible recovery, i.e., 100% of his unpaid wages and 22% of the possible statutory and liquidated damages.  In light of the previously discussed litigation risks, this rate of recovery is reasonable under the circumstances."); *Beckert v. Ronirubinov*, No. 15-CV-1951, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (approving FLSA settlement of $29,557.97 out of a maximum possible recovery of $114,700).

Finally, the Parties have satisfactorily addressed the Court's concerns about the amount of attorneys' fees for which Plaintiff will be responsible.  As noted in the last Order, the Court was concerned that ¶ 5 of the Negotiated Settlement Agreement—which, then as now, read, "The Parties shall bear their own attorneys' fees, costs and disbursements and there shall be no application to any Court by any Court [sic] by any Party or by any attorney representing any Party for attorneys' fees, costs and/or disbursements, except as provided herein"—opened the door to Plaintiff being made to "bear [his] own attorneys' fees" to the extent not provided for by the settlement agreement.  (*See* Order 8–9.)  This wording still strikes the Court as odd; however, the Parties have unambiguously represented that the settlement "contemplates the total payment

---

[6] The Court deducts the attorneys' fees from this figure, because the Parties provided no basis to conclude that, as they say, the approximately $29,000 recovery figure was inclusive of attorneys' fees.  (*See* Suppl. Mem. 2 ("Plaintiff sought to recover approximately $29,000.00 *inclusive of liquidated damages and attorneys' fees*." (emphasis added)).)

to Plaintiff's Counsel in the amount of $6,000.00 in attorneys' fees and costs," and that "[n]o further payments shall be sought from Plaintiff." (Suppl. Mem. 5.) With such assurances from the Parties, the Court concludes that the attorneys' fees provision is acceptable.[7]

With these prior concerns out of the way, the Court sees no other reason why the settlement should not be approved. The *Wolinsky* factors collectively weigh in favor of settlement, *see Wolinsky*, 900 F. Supp. 2d at 335–36, and allowing the Parties to settle would afford them certainty, finality, and resolution of their dispute without the attendant risks and delay inherent in litigation generally, *see, e.g.*, *Zamora*, 2016 WL 1366653, at *1 (approving FLSA settlement where it would "allow the parties to avoid the costs associated with continued litigation" and "would provide certainty whereas continued litigation would carry significant risks"). Indeed, the mitigation of litigation risks may weigh particularly heavily in this case, where the Parties have agreed that "Defendants' produced payroll documents . . . on their face support the argument that Plaintiff either worked [fewer] overtime hours than those alleged in the [C]omplaint or was compensated for all hours worked," and where "Plaintiff understands that in order to succeed at trial he must prove that he worked a greater number of hours than those reflected in Defendants' payroll records." (Mem. of Law in Supp. of Mot. for Approval of FLSA Settlement and Att'ys' Fees and Costs 3–4 (Dkt. No. 25).) Therefore, the Court is satisfied that the proposed settlement represents a reasonable compromise of Plaintiff's claims, and, accordingly, it is approved.

---

[7] As noted in the last Order, the hourly rates that the Parties attempt to use for determining the lodestar amount of attorneys' fees seem a little steep. (*See* Order 11–12.) However, because the amount of attorneys' fees sought is only $6,000 out of a $22,500 settlement, (*see* Revised Settlement Proposal, at unnumbered 6–7), or a bit under 27%, the Court considers the fees reasonable, *see, e.g.*, *Beckert*, 2015 WL 8773460, at *3 ("[T]he [c]ourt finds an award of [attorneys' fees equal to] one-third of the total settlement [net of costs] merited . . . .").

10

### III. Conclusion

For the reasons stated, the Parties' settlement is approved.

SO ORDERED.

Dated: White Plains, New York
April 27, 2016

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

11